**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EDWARD SANTIAGO, on behalf of himself )
and his minor son, J.S., and EDWARD )
SANTIAGO, JR., )
                                        )
      Plaintiffs, )
                                         )      No. 20 C 6371
   v. )
                                         )      Judge Sara L. Ellis
UNITED STATES OF AMERICA; VILLAGE )
OF WESTCHESTER, a Municipal Corporation; )
VILLAGE OF BROADVIEW, a Municipal )
Corporation; JERRY DILDINE, a Westchester )
Police Officer; VINCE LAMANNA, a )
Westchester Police Sergeant; ADAM )
RAUGLAS, a Westchester Police Officer; )
MARK BOROVEK, Westchester Police Deputy )
Chief of Police; THOMAS MCDONALD, a )
Drug Enforcement Agency Special Agent; )
DANIEL HEIMERDINGER, a Drug )
Enforcement Agency Special Agent; DAVID )
BRAZAO, a Drug Enforcement Agency Special )
Agent; CHRISTOPHER O'REILLY, a Drug )
Enforcement Agency Special Agent; and KEN )
KLAMER, a Broadview Police Officer, )
                                         )
      Defendants. )

## <u>OPINION AND ORDER</u>

On April 30, 2019, officers and agents from the Westchester Police Department, Chicago

Police Department, Broadview Police Department, and the Drug Enforcement Agency ("DEA")

conducted a drug investigation that involved Plaintiffs Edward Santiago Sr. ("Edward Sr.") and

his sons Edward Santiago Jr. ("Edward Jr.") and J.S. After the officers and agents detained

Plaintiffs and searched their cars and home but found no illegal contraband, Plaintiffs filed this

lawsuit. As relevant here, Plaintiffs bring claims for illegal search and seizure, failure to

intervene, excessive force, and conspiracy against the individual officers and agents pursuant to

42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The DEA Agents—Thomas McDonald, Luke Murphy, Daniel Heimerdinger, David Brazao, and Christopher O'Reilly—have filed a motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that Plaintiffs have sufficiently placed the DEA Agents on notice of the claims against them and that qualified immunity does not protect the DEA Agents from liability at the pleading stage, the Court denies the DEA Agents' motion to dismiss.

## BACKGROUND[1]

On April 30, 2019, in connection with a larger drug investigation, the Westchester Police Department requested a K-9 police dog sniff on a Chrysler Sebring parked outside of Plaintiffs' house. Ken Klamer, a Broadview Police Officer, responded to the request and conducted a K-9 police dog sniff on the Sebring in the presence of at least one other Westchester Police Officer, Jerry Dildine, and/or an unidentified DEA Agent. The K-9 police dog did not positively alert to the presence of illegal drugs. But Klamer either indicated to Dildine, Vince Lamanna, a Westchester Police Sergeant, and other Westchester police and/or DEA Agents that a positive dog sniff had occurred despite knowing it did not meet the training criteria for a positive alert, or he told those on the scene that a positive dog sniff had not resulted. The officers and/or agents, including Dildine and Lamanna, nonetheless had the Sebring towed to the Westchester Police Department.

Later that day, nineteen-year-old Edward Jr. waited for his father, Edward Sr., and nine-year-old younger brother, J.S., to come home so that they could all go out to eat at a restaurant.

---

[1] The Court takes the facts in the background section from Plaintiffs' first amended complaint and presumes them to be true for the purpose of resolving the DEA Agents' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). As discussed below, the Court does not find it appropriate to consider the exhibits the DEA Agents have attached to their motion to dismiss at this stage.

When Edward Sr. and J.S. arrived home in their Dodge Durango, Edward Sr. noticed that the Sebring was not parked on the street outside the house where he had left it. Believing someone had stolen the Sebring, Plaintiffs set off in their Durango to the Westchester Police Department to report the Sebring as missing. Edward Sr. drove, with Edward Jr. in the back seat and J.S. in the front passenger seat.

Within a block of leaving their home, several officers and agents—Dildine, Lamanna, Adam Rauglas, a Westchester Police Officer, Mark Borovek, the Westchester Deputy Chief of Police, McDonald, Murphy, Heimerdinger, and either Brazao or O'Reilly—pulled over the Dodge Durango in a felony traffic stop. Lamanna and Borovek directed the stop, although the other officers and agents had agreed to the plan. The officers and agents pointed their weapons at Plaintiffs and shouted at them aggressively. Plaintiffs became anxious, with J.S. repeating "Dad, Dad, we didn't do anything." Doc. 22 ¶ 43. Edward Sr. attempted to calm his son down and told the officers and agents that J.S. was only nine years old. The officers and agents continued pointing their guns at Plaintiffs, swearing at them, telling them to stop talking, and threatening to shoot them. The officers and agents ordered Plaintiffs out of the car and told Edward Sr. to throw the keys out the window. Plaintiffs complied, after which the officers and agents handcuffed Edward Sr. and Edward Jr. and transported Plaintiffs to the Westchester Police Department. The officers and agents also searched the Durango and later towed it to the Westchester Police Department.

Upon arrival at the police station, Edward Sr. remained handcuffed in an interview room, with Edward Jr. handcuffed in a separate cell. Although J.S. was not handcuffed or placed in a holding cell, he remained at the station despite Edward Sr.'s requests that the officers call Edward's wife to pick up J.S. While at the police station, Edward Sr. noticed that the agents and

officers had searched both the Sebring and Durango. Toward the end of Plaintiffs' detention, McDonald coerced Edward Sr. into signing two consent forms to allow DEA agents to search his home and vehicles. To obtain his signature, McDonald told Edward Sr. that if he did not sign the consent form, he, along with Edward Jr., would have to remain at the police station overnight. After his release from custody, Edward Sr. learned from neighbors that DEA agents, along with the other officers, had searched his home before he signed the consent form. Klamer conducted another K-9 dog search and a ComEd worker also participated in the search. Ultimately, the officers and agents did not find any illegal contraband in the Sebring, Durango, or house.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Materials Attached to the DEA Agents' Motion to Dismiss**

In connection with their motion to dismiss, the DEA Agents attached police reports and body camera footage concerning the incident, as well as the consent form to search Plaintiffs' home, which Edward Sr. signed.  They argue that the Court should consider the reports, video, and consent form because Plaintiffs reference them in the first amended complaint.  Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  The extrinsic evidence must also be "concededly authentic."  *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

In the first amended complaint, Plaintiffs allege that the K-9 dog's behavior, captured on video and described in police reports, did not indicate a positive alert on the Sebring and that Klamer knew this and failed to properly communicate it to the other officers on the scene or otherwise did not know how to properly interpret the K-9's behavior.  Doc. 22 ¶ 35.  The DEA Agents argue that this allegation allows the Court to consider the reports and video to conclude that the DEA Agents had no involvement in the dog sniff of the Sebring.  But the Court does not find Plaintiffs opened the door in the first amended complaint to consideration of this evidence for purposes of determining the DEA Agents' involvement on a motion to dismiss.  Doing so would require the Court to improperly make credibility determinations and findings of fact about the events in question at the pleading stage.

As for the consent form, the Court similarly finds that consideration of this form would result only in a swearing contest. The consent form states that Edward Sr. freely consented to the search and had not been threatened or coerced in any way, Doc. 41-4 at 2, which contradicts Plaintiffs' allegations that McDonald coerced Edward Sr. into signing the form, Doc. 22 ¶¶ 65–66. The DEA Agents have not pointed to any authority indicating that the statements on the consent form preclude Plaintiffs from contesting the voluntariness of Edward Sr.'s consent, which, indeed, remains a factual question based on the totality of the circumstances.[2] *United States v. Thurman*, 889 F.3d 356, 367 (7th Cir. 2018). Given the factual nature of the inquiry, the Court does not find it appropriate to consider the contents of the consent form at the motion to dismiss stage. Therefore, the Court proceeds to address the DEA Agents' arguments without taking into account the police reports, video, or consent form.

## II. Group Pleading

Moving on to the substance of the DEA Agents' arguments for dismissal, they first argue that Plaintiffs have inappropriately engaged in group pleading, referring collectively to the DEA Agents without specifically tying each of the individual DEA Agents to any alleged unconstitutional conduct. Rule 8(a) does not require a plaintiff, "without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific [defendant]." *Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013). Nonetheless, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Group pleading that refers to a group of defendants collectively suffices under Rule 8 when a plaintiff

---

[2] The DEA Agents cite to *United States v. Renken*, 474 F.3d 984 (7th Cir. 2007), for the proposition that "a suspect's consent to search his home and vehicle may be voluntary where the consent form contains express terms that the suspect was not required to give consent." Doc. 41 at 13. But *Renken* did not solely consider the consent form in determining the voluntariness of consent and instead used that as one of many factors in determining if any evidence of coercion existed. 474 F.3d at 988.

provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims. *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014) ("[A]ll that is required at this stage of the proceedings is that Plaintiff put Defendant Officers on notice of his claims by alleging a short and plain statement showing that he is entitled to relief."); *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (collecting cases). And allegations directed at multiple defendants may suffice to plead personal involvement when they clearly pertain to all of those defendants. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("Brooks adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants").

Here, Plaintiffs have pleaded sufficient facts in the first amended complaint to put the DEA Agents on notice of the claims against them. To the extent possible, Plaintiffs have identified the individual officers and agents who participated in each action, but they maintain that, without further discovery, they may not have properly identified the responsible parties. Instead, according to Plaintiffs, their allegations suffice at this stage to suggest that each of the individual Defendants participated in the entire day's events so as to alert the DEA Agents of the claims against them. *See Horton v. City of Rockford*, No. 18 C 6829, 2019 WL 3573566, at *4 (N.D. Ill. Aug. 6, 2019) (noting the difficulties in identifying the responsible parties in police misconduct cases without pretrial discovery); *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 876 (N.D. Ill. 2019) ("The complaint does not . . . allege . . . other details of precisely what each defendant did in the course of the unlawful search, but it plainly alleges that all of them participated in the entire episode. That suffices to alert the defendants as to what they have to defend against; a complaint needn't allege every detail about each individual's participation to

7

plausibly allege their involvement or to put them on notice of the nature of the claim."). The Court agrees with Plaintiffs that the first amended complaint sufficiently places the DEA Agents on notice of Plaintiffs' claims that they conspired with the other officers and together illegally searched the Sebring, Durango, and Plaintiffs' home, seized Plaintiffs without probable cause, and used excessive force against Plaintiffs. *See Robles*, 354 F. Supp. 3d at 876 ("This is not a scenario where numerous unaffiliated officers arrive at a scene independently and then engage based on an ad hoc assignment or on their own initiative; in such cases, it may be less clear as to which officers personally participated in the challenged conduct. The defendants here are alleged to have operated as a coordinated unit working to pull off a common objective and the complaint plainly alleges that all of the defendants participated in the challenged conduct— namely, the unlawful search (and the conspiracy to conduct it)."). To the extent Plaintiffs refer to the individual Defendants collectively, they do so because they direct their allegations at all Defendants. *Brooks*, 578 F.3d at 582. While Plaintiffs will ultimately have to demonstrate each of the DEA Agents' personal involvement, they have met the pleading requirements despite at times engaging in group pleading. *See Kuri v. City of Chicago*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (plaintiff allowed to direct allegation at multiple defendants at pleading stage where plaintiff may not be aware of "which individual committed which parts of the alleged misconduct before the benefit of discovery"); *Koh*, 2013 WL 5348326, at *5 (noting that plaintiffs "must eventually tie particular officers to particular injuries to survive summary judgment").

## III.     Qualified Immunity

The DEA Agents next argue that qualified immunity protects them from liability for their actions in assisting in the felony traffic stop and related searches. "Qualified immunity attaches

8

when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability police officers who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). At the motion to dismiss stage, to overcome an assertion of qualified immunity, Plaintiffs must have alleged a violation of a statutory or constitutional right that was clearly established at the time of the violation so that a reasonable officer would have known of the unlawfulness of his conduct. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.'" *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (citation omitted); *see also Ewell*, 853 F.3d at 920 ("[Q]ualified immunity is sometimes a factual question better reserved for summary judgment.").

### A. Claims Requiring Probable Cause

Here, Plaintiffs argue that the individual Defendants, including the DEA Agents, violated the Fourth Amendment by searching the Sebring and Durango and stopping and seizing them without probable cause, or, alternatively, by failing to intervene in these constitutional violations. "When the constitutionality of an action depends on the existence of probable cause, the officer must have had 'arguable probable cause' for qualified immunity to attach." *Bruce v. Guernsey*, 777 F.3d 872, 878 (7th Cir. 2015) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). "Thus, even when an officer lacks probable cause, he is still entitled to qualified

immunity when a reasonable officer 'could have reasonably believed that probable cause existed in light of well-established law.'" *Id.* (quoting *Humphrey*, 148 F.3d at 725).

The DEA Agents argue that no plausible basis exists to infer that they knew that the K-9 dog sniff of the Sebring did not indicate a positive alert for drugs. They contend that Plaintiffs only speculate as to the presence of an unidentified DEA Agent during the dog sniff of the Sebring, meaning that one cannot infer that the DEA Agents obtained any knowledge that the dog's behavior did not indicate a positive alert. Consequently, they maintain that they cannot be held liable for any alleged constitutional violations based on the lack of probable cause because they reasonably believed that probable cause existed for all of their subsequent actions based on the positive alert. *See United States v. Washburn*, 383 F.3d 638, 643 (7th Cir. 2004) ("[A] positive alert by a trained drug dog gives rise to probable cause to search a vehicle.").

But in making this argument, the DEA Agents ignore Plaintiffs' allegations in favor of their own version of events. Plaintiffs allege that the K-9 police dog did not provide a positive alert for drugs on the Sebring, that at least one DEA agent may have been present for the dog sniff, and that Klamer, Dildine, Lamanna, and that DEA Agent all knew that the dog sniff did not provide probable cause to tow the Sebring. Plaintiffs also allege that the positive alert served as the basis for the later stop of Plaintiffs in the Durango and that all of the individual Defendants, including the DEA Agents, knew that no such probable cause existed.

"[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Duran v. Sirgedas*, 240 F. App'x 104, 115 (7th Cir. 2007) (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)). Even assuming

that the DEA Agents did not witness the dog sniff, in order for the DEA Agents to have relied on information from another officer to justify their actions, "the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). Here, given Plaintiffs' allegations, the Court can draw the inference that a reasonable officer in the DEA Agents' position could not have in good faith relied on information about a positive dog sniff as a basis for probable cause. *See McCullough v. Hanley*, No. 17 C 50116, 2018 WL 3496093, at *9 (N.D. Ill. July 20, 2018) ("While it is true that the collective knowledge doctrine permits law enforcement officers to act upon information provided by other officers of which they have no personal knowledge, it does not apply where, as alleged here, the officer knows the conveyed information is false."); *cf. Bishop v. White*, No. 16 C 6040, 2019 WL 5550576, at *3 (N.D. Ill. Oct. 28, 2019) (finding plaintiff had not sufficiently pleaded several officers' knowledge that no probable cause existed where he had "not allege[d] even conclusorily that the other defendants took action with any reason to doubt that plaintiff had discharged a firearm or otherwise committed a crime," with the allegations instead suggesting that the officers had "acted in reasonable reliance on" the word of the officers present at the scene); *Graham v. Blair*, No. 10-CV-772, 2011 WL 6888528, at *6 (S.D. Ill. Dec. 28, 2011) ("[I]f there are no circumstances that would lead a reasonable officer in the defendant's position to believe the officer directing the seizure cannot be trusted to assess probable cause, the defendant can rely on the lead officer in good faith and be accorded qualified immunity for any unlawful arrest."). Thus, qualified immunity does not protect the DEA Agents from liability for their subsequent actions in seizing Plaintiffs or searching the Sebring or Durango at this stage.

11

### B. Excessive Force Claim

Next, the DEA Agents argue that qualified immunity protects them from Plaintiffs' excessive force claim. The Fourth Amendment's prohibition on unreasonable seizures limits an officer's use of force during an arrest, and the Court reviews the totality of the circumstances and "engage[s] in 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 396 (1989)). When balancing these competing factors, the Court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court evaluates reasonableness from the "perspective of a reasonable officer on the scene" and not with "20/20" hindsight. *Graham*, 490 U.S. at 396. "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

The DEA Agents contend that because they believed that Plaintiffs were involved in drug trafficking, they could protect themselves during the traffic stop by displaying their weapons and determining the appropriate level of force. *See Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009) ("[C]ourts give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations."); *Williams v. City of Champaign*, 524 F.3d 826, 828 (7th Cir. 2008) ("[I]f you are a police officer with reason to believe there may be an armed robber in a van you approach with utmost caution, which may include pointing a gun at the

occupants."). But as the Court already discussed, the first amended complaint sufficiently

alleges that the DEA Agents did not have probable cause to support the traffic stop or the seizure

of Plaintiffs. Thus, the Court must consider whether the DEA Agents' actions—pointing their

weapons at Plaintiffs and aggressively threatening to shoot them despite having no probable

cause to stop and seize Plaintiffs, Plaintiffs posing no threat, and J.S. being a minor—violated

clearly established law.[3]

The Seventh Circuit has recognized that "gun pointing when an individual presents no

danger is unreasonable and violates the Fourth Amendment." *Baird*, 576 F.3d at 345; *see also*

*Jacobs v. City of Chicago*, 215 F.3d 758, 773–74 (7th Cir. 2000) ("[A]t the time the Defendant

Officers entered Jacobs' apartment, they do not appear to have had probable cause to suspect

Jacobs had committed any crime or to believe that any criminal activity was being conducted in

Jacobs' apartment. Taking these facts as true, it appears that the Defendant Officers' use of force

against Jacobs while executing an allegedly illegal search of his home and an allegedly unlawful

seizure of his person was out of proportion to any danger that Jacobs could possibly have posed

to the officers or any other member of the community."). And in a strikingly similar situation,

the Seventh Circuit concluded that pointing a gun at a nine year old during a search and

threatening to pull the trigger on him was "objectively unreasonable." *McDonald v. Haskins*,

966 F.2d 292, 294–95 (7th Cir. 1992) ("It should have been obvious to Haskins that his threat of

deadly force—holding a gun to the head of a 9-year-old and threatening to pull the trigger—was

---

[3] Plaintiffs do not appear to base their excessive force claims on the fact that the DEA Agents placed
Edward Sr. and Edward Jr. in handcuffs or that the DEA Agents yelled and swore at them, neither of
which would support an excessive force claim. *See Norman v. City of Lake Station*, 845 F. App'x 459,
461 (7th Cir. 2021) (no excessive force claim where the plaintiff complained only about the use of
handcuffs, not the manner in which they were applied); *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir.
2017) ("Apprehension that the police *might* do something falls short of a showing that they actually did
use objectively abusive tactics. We take Archer at her word that the officers' demeanor was rude and that
they were disrespectful, but the Supreme Court has never held that the Fourth Amendment protects
against those problems.").

objectively unreasonable given the alleged absence of any danger to Haskins or other officers at the scene and the fact that the victim, a child, was neither a suspect nor attempting to evade the officers or posing any other threat.").  Given Plaintiffs' allegations that the DEA Agents had no basis to stop Plaintiffs' car or reason to believe that they posed a threat to the officers, and that Plaintiffs complied with the DEA Agents' orders, the Court cannot conclude that qualified immunity protects the DEA Agents from Plaintiffs' excessive force claims.  *See Baird*, 576 F.3d at 347 (qualified immunity did not apply where "a reasonable jury could find that Renbarger violated the plaintiffs' clearly established right to be free from excessive force when he seized and held them by pointing his firearm at them when there was no hint of danger"); *Jacobs*, 215 F.3d at 774 ("Under existing Seventh Circuit and Supreme Court precedent at the time the use of force occurred in this case, it appears to be clearly unreasonable for the Defendant Officers to have pointed a loaded weapon at Jacobs for an extended period of time when they allegedly had no reason to suspect that he was a dangerous criminal, or indeed that he had committed any crime at all, Jacobs was unarmed, and when Jacobs had done nothing either to attempt to evade the officers or to interfere with the execution of their duties."); *Cruz v. City of Chicago*, No. 20-cv-250, 2021 WL 2645558, at *6 (N.D. Ill. June 28, 2021) ("[T]here needs to be a reason for pointing a lethal weapon at someone.  Otherwise, a person enjoys a clearly established right not to be held at gunpoint.").

### C.    Search of Plaintiffs' Home

"A warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth Amendment."  *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005).  But "[c]onsent is a well-recognized exception to the Fourth Amendment's warrant requirement."  *United States v. Jones*, 22 F.4th 667, 675 (7th Cir. 2022).  In the first amended

complaint, Plaintiffs allege that McDonald, one of the DEA Agents, coerced Edward Sr. into signing a consent form for the search of his home and vehicles. Plaintiffs also maintain that Edward Sr.'s consent could not be valid because he was illegally detained at the time he signed the form. Plaintiffs further allege that the DEA Agents searched their home prior to obtaining Edward Sr.'s consent and that the search exceeded the scope of the consent form because it only authorized DEA Agents to conduct the search but other agencies and individuals also participated in it. The DEA Agents argue that qualified immunity nonetheless protects them from Plaintiffs' claims based on these allegations.

First, the DEA Agents argue that qualified immunity applies because, even assuming that Edward Sr. signed the consent form after the search occurred, the first amended complaint does not include allegations that any of the DEA Agents knew that Edward Sr. had not consented before they searched the house and so they could have reasonably believed in the legitimacy of their actions. But the DEA Agents again ignore Plaintiffs' allegations, in this case that McDonald's request that Edward Sr. sign the consent form amounted to an "after-the-fact covering up of the illegal searches," Doc. 22 ¶ 67, and that the DEA Agents knew that they illegally searched the home, *id.* ¶ 92. Thus, the first amended complaint plausibly alleges that the DEA Agents could not have reasonably believed that they had obtained consent to search Plaintiffs' home, and so the Court cannot find that qualified immunity applies to this aspect of Plaintiffs' illegal search claim at the pleading stage.

Next, the DEA Agents appear to argue that Plaintiffs' allegations concerning whether the scope of the search exceeded Edward Sr.'s consent do not apply to them because Plaintiffs admit that the consent form authorized the DEA Agents to search the home. An individual may limit the scope of their consent to a search, and determining whether the search exceeded the

authorized scope involves a question of fact. *Thurman*, 889 F.3d at 367–68. The Court considers what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect," with relevant factors including the individual's "behavior, the purpose of the search, and any show of force." *Id.* (citations omitted). Here, as Plaintiffs point out, they allege that the DEA Agents knowingly allowed the search to go beyond Edward Sr.'s consent. Although the facts may show otherwise, at this stage, the Court cannot conclude that this aspect of Plaintiffs' illegal search claim does not implicate the DEA Agents.

Finally, the DEA Agents argue that qualified immunity bars any claim that they coerced Edward Sr. into signing the consent form. To be valid, an individual's consent to search must be voluntary and "not coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 367 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). The voluntariness of consent is a factual question based on the totality of circumstances, considering "(1) the age, education, and intelligence of the defendant; (2) whether he was advised of his constitutional rights; (3) how long he was detained before consenting; (4) whether he consented immediately or was prompted by repeated requests; (5) whether physical coercion was used; and (6) whether he was in custody when he consented." *Id.* "[C]onsent given during an illegal detention is presumptively invalid." *United States v. Johnson*, 427 F.3d 1053, 1056 (7th Cir. 2005). The presumption may be rebutted, however, with the Court considering "(1) the time elapsed between the illegal conduct and the discovery of the evidence; (2) the existence of intervening circumstances; and (3) the nature of the official misconduct." *Id.* The DEA Agents first contend that Plaintiffs' allegations do not amount to coercion, but that remains a factual dispute inappropriate for resolution at the motion to dismiss stage, particularly given the presumption of invalidity based on Plaintiffs' alleged illegal detention. *Id.* The DEA Agents further contend

16

that, when McDonald told Edward Sr. that if he did not sign the consent form, officers and agents would hold him and Edward Jr. overnight, McDonald could not have known that such a statement violates clearly established law.  But taking as true Plaintiffs' allegations that the DEA Agents knew that they had no basis to detain Plaintiffs or search the house, McDonald and the other DEA Agents should have known that making such a baseless threat would render any consent they obtained from Edward Sr. involuntary.  *See Antonelli v. Sherrow*, 246 F. App'x 381, 384 (7th Cir. 2007) ("[A] threat to obtain a search warrant does not render consent involuntary unless the threat is baseless or not genuine.").  Therefore, at this stage, qualified immunity does not protect the DEA Agents from Plaintiffs' claims concerning the search of their home.

## IV.     Conspiracy Allegations

Finally, the DEA Agents argue that Plaintiffs have failed to sufficiently allege that the DEA Agents conspired with the other named officers to deprive Plaintiffs of their constitutional rights.[4]  To support conspiracy liability, Plaintiffs must allege that "(1) the individuals reached an agreement to deprive [Plaintiffs] of [their] constitutional rights, and (2) overt acts in furtherance actually deprived [Plaintiffs] of those rights."  *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).[5]  The DEA Agents argue that Plaintiffs have only included conclusory allegations of an agreement and the fact that they participated in related searches with officers

---

[4] The Court understands the DEA Agents to argue that Plaintiffs' allegations do not sufficiently state a claim, not that qualified immunity applies to the conspiracy allegations, and so does not address qualified immunity with respect to the conspiracy claim.

[5] Although *Beaman* involved a conspiracy claim under § 1983, the DEA Agents do not argue that a claim for conspiracy is not cognizable under *Bivens* and so the Court looks to § 1983 in addressing their arguments concerning the conspiracy claim.  *See Bieneman v. City of Chicago*, 864 F.3d 463, 469 (7th Cir. 1988) ("Actions under § 1983 and those under the principal fount of direct suits, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), are identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens*).").

from other police departments does not suffice to establish such an agreement. But the DEA

Agents ask too much of Plaintiffs at this stage: "it is enough in pleading a conspiracy merely to

indicate the parties, general purpose, and approximate date, so that the defendant has notice of

what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also*

*Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff

needed to allege was a plausible account of a conspiracy."). Here, Plaintiffs have done so,

alleging that, on April 30, 2019, the individual Defendants, including the DEA Agents, agreed to

a plan and then engaged in concerted action to seize Plaintiffs and search their vehicles and home

without probable cause in an attempt to find drugs. At the pleading stage, this suffices to state a

conspiracy claim. *See Sánchez v. Vill. of Wheeling*, No. 19 C 2437, 2020 WL 490964, at *8

(N.D. Ill. Jan. 30, 2020) (plaintiff stated a viable conspiracy claim by identifying the parties to

the conspiracy, the general purpose of coercing false statements to obtain the plaintiff's

conviction, and the approximate dates of the conspiracy).

## CONCLUSION

For the foregoing reasons, the Court denies the DEA Agents' motion to dismiss [40].

Dated: February 8, 2022

_____
SARA L. ELLIS
United States District Judge